IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


UNITED STATES OF AMERICA                         PLAINTIFF/RESPONDENT

v.                 Criminal No. 2:16-cr-20022-PKH-MEF-1
                   Civil No. 2:20-cv-02161-PKH-MEF

TERRANCE QUARTEZ JARRETT                          DEFENDANT/MOVANT


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Currently before the Court is a 28 U.S.C. § 2255 Motion filed by the *pro se* Movant, Terrance Q. Jarrett ("Jarrett") (ECF Nos. 102, 103**)**, the Response of the United States ("Government") (ECF No. 108), and the Reply filed by Jarrett (ECF No. 111).   Although for different reasons, both Jarrett and the Government agree that an evidentiary hearing is not necessary in this matter, as the § 2255 motion, the files, and the records in this case contain all the information necessary to issue a decision in this matter.   (ECF No. 108 at 16-18; ECF No. 111 at 21).

### I.      BACKGROUND

On January 11, 2017, a three-count superseding indictment (ECF No. 39) was filed against Jarrett.   Count One charged Jarrett with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).   *Id.* at 1.   Count Two charged Jarrett with possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D).     *Id.* at 1-2.   Count Three charged Jarrett with being a felon in possession of

1

firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Jarrett was appointed a Federal Public Defender, James B. Pierce ("Pierce").   (Text Only Order entered on July 14, 2016).   Jarrett pleaded not guilty to the superseding indictment (ECF No. 42), and he was tried before a jury from January 23-25, 2017.   (ECF Nos. 49-51).   The jury found Jarrett guilty of Counts One and Two.   (ECF No. 52).   A mistrial was declared as to Count Three.   (ECF No. 55).   Thereafter, the Government filed a Motion to Dismiss Count Three (ECF No. 57), and the motion was granted on February 15, 2017 (ECF No. 58).

On July 20, 2017, Jarrett was sentenced on Count One to 180 months of imprisonment, 36 months of supervised release, and a $100 special assessment.   (ECF No. 74).   On Count Two, Jarrett was sentenced to 60 months imprisonment, 24 months supervised release, and a $100 special assessment.   *Id*.   The sentences were ordered to run concurrently.   *Id*.

Jarrett appealed (ECF No. 76) the denial of his motion for mistrial (ECF No. 91-2).   Jarrett contended a "mistrial should have been granted after a prosecution witness referred to Jarrett's status of having an outstanding warrant (for failure to pay a fine) at the time he was apprehended on the instant charges for distribution of narcotics" in violation a pretrial order.   (ECF No. 91-2 at 3).   On January 3, 2019, the Court of Appeals for the Eighth Circuit, in an unpublished decision (ECF No. 91-2), affirmed the district court, *United States v. Jarrett,* 746 F. App'x 604 (8th Cir. 2019).   The Eighth Circuit found that "in context, the prejudicial effect of this improper testimony was minimal."   *Id.* at 605.   It also noted that the trial judge instructed the jury to disregard the evidence.   *Id.*   Under the circumstances, the Eighth Circuit found no abuse of discretion.   *Id.* The Eighth Circuit also noted that "the evidence against Jarrett was strong."   *Id.*   The Eighth Circuit's mandate was issued on April 4, 2019.   (ECF No. 91).   After receiving two extensions

of time (ECF Nos. 93 and 95) to file his § 2255 Motion due to the Covid-19 pandemic and the Bureau of Prisons lock-down, Jarrett timely filed the instant Motion on September 8, 2020.

## II.    DISCUSSION

### A.  SECTION 2255

Section 2255(a) allows "[a] federal prisoner in custody under sentence by a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  "Relief under [§] 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice."  *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

### B.  GROUNDS FOR RELIEF

Jarrett maintains his trial counsel provided ineffective assistance of counsel in three ways: Ground One alleges trial counsel failed to object to, and/or request curative instructions, when the Government elicited opinion testimony from law enforcement officers as to what constituted user amounts of methamphetamine and marijuana and what constituted amounts indicative of distribution of the same drugs; Ground Two alleges trial counsel failed to object to an inadequate jury instruction with respect to a grant of immunity to Amber Henderson ("Henderson"), a Government witness; and, Ground Three alleges trial counsel failed to object to a jury instruction which permitted the jury to consider the existence of a large quantity of drugs to imply an intent

3

to distribute.

The Government contends Jarrett is entitled to no relief.   As to Ground One, the Government states that the law enforcement testimony in this case qualified as expert testimony and any objection would have been denied.   Regarding Ground Two, the Government argues the instruction given on the grant of immunity to Henderson mirrored the Eighth Circuit model instruction and was a correct statement of the law.   Similarly, with respect to Ground Three, the Government argues that the instruction given with respect to the possession of a large quantity of drugs mirrored the Eighth Circuit model instruction and was based on existing case law.

### C.  INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

The Sixth Amendment provides that the accused shall have the assistance of counsel in all criminal prosecutions.   *Gideon v. Wainwright*, 372 U.S. 335 (1963).   This right is to the "effective assistance of competent counsel."   *McMann v. Richardson*, 397 U.S. 759, 770 (1970) (citations omitted).   "The purpose of the effective assistance guarantee is . . . to ensure that criminal defendants receive a fair trial."   *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

The Court evaluates ineffective assistance of counsel claims brought under § 2255 using the standards set forth by the Supreme Court in *Strickland*.   To prevail on his ineffective assistance of counsel claims, Jarrett must prove, by a preponderance of the evidence, two related but independent issues.   First, Jarrett must show that counsel's performance was so deficient so as to not constitute counsel as guaranteed the defendant by the Sixth Amendment.   *Id*. at 687.   Second, Jarrett must show that counsel's deficient performance materially and adversely prejudiced the outcome of the case.   *Furnish v. United States of America*, 252 F.3d 950, 951 (8th Cir. 2001).

For the first prong, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88.   The Supreme Court instructed:

> Judicial scrutiny of counsel's performance must be highly deferential.   It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.   A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.   Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id*. at 689.   A reviewing court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."   *Id*. at 690.   "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."   *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).

Regarding the second prong, to prove an error was prejudicial Jarrett must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different."   *Strickland*, 466 U.S. at 694.   "[N]ot every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."   *Id*. at 693.

### D.   GROUND ONE: Opinion Testimony by Law Enforcement Officers

Jarrett maintains that two Government witnesses, Officer Cody Elliott and Investigator Greg Napier, and one defense witness, Detective Donnie Ware, gave their opinions on what were

user quantities of methamphetamine and marijuana in violation of Rule 701 of the Federal Rules

of Evidence.   Jarrett complains that his counsel did not object to the admissibility of this evidence

and did not ask for a limiting instruction.

Rule 701 governs opinion testimony by lay witnesses and provides as follows:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Rule 702 governs the testimony of expert witnesses and provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The jury was instructed regarding opinion testimony of expert witnesses.   (ECF No. 86-3

at 11; Final Instruction No. 9).

Officer Elliott testified that he a was a canine officer and worked primarily narcotics

cases.  (ECF No. 86 at 81-82).   He had been with the Fort Smith Police Department for

over 10 years and prior to that spent eight years as a military police officer in the Marine

Corps.  *Id.* at 82.   On May 17, 2016, Officer Elliott was asked to assist in making contact

with Jarrett at an apartment in Ft. Smith.  *Id.* at 83.   Just prior to the testimony that Jarrett

objects to, the Government asked Officer Elliott regarding his investigations of narcotics

cases, the training he had with respect to narcotics investigations, the yearly continuing

education conferences he attended, and the nearly 1,000 narcotics related arrests he had

made.   *Id.* at 101-02.   Thereafter, Officer Elliott testified as follows:

> Q.  In those arrests, have you seen, have you arrested people who had small amounts of drugs?
> A.  Yes.
> Q.  Have you arrested people who had large amounts of drugs?
> A.  I have.
> Q.  Have you interviewed those arrestees?
> A.  I have.
> Q.  And in those conversations, have they told you what was a user amount for them and what was an amount for distribution?
> A.  Yes.
> Q.  Have you testified before in court regarding what a user amount of controlled substances would be?
> A.  I have.
> Q.  How many times and would it be state or federal?
> A.  State, but I can't tell you.   There's numerous times.
> Q.   Now, looking at Government's Exhibit 10 [identified as methamphetamine crystal][1] is that an amount that would be a user amount or more?
> A.  More.
> Q.  How much would be a user amount?
> A.  Roughly a gram is a user amount.
> Q.  Based on your training and experience, would one of those pieces ---
> A.  Yes.
> Q.  –be close to a gram?
> A.  Yes.
> Q.  Is this Government's Exhibit 12 [identified as marijuana (small bundles)]?[2]
> A.  It is.
> Q.  Okay.   Can you explain the way this is packaged up?   Based on your training and experience, have you seen packages similar to this during arrests you have made and at your trainings?
> A.  Yes.
> Q.  And what is the purpose of packaging green leafy substances up

---

[1] ECF No. 86-2 at 1.
[2] *Id.*

in small amounts like that?
A.   Normally for sales.   One of those bags would probably be the
amount for a user, just one of the smaller bags by itself.

*Id.* at 102-03.

Jarrett similarly contends that his counsel failed to object to certain testimony offered by Investigator Napier.   Investigator Napier testified he worked for the Fort Smith Police Department as a narcotics investigator.   (ECF No. 86 at 173).   He was in his ninth year of investigating narcotics and had been with the department for 19 years.   *Id.* Investigator Napier testified he had investigated hundreds of narcotics cases and had received training in multiple aspects of narcotics investigation, including working with confidential informants, making cases, testifying, identifying drugs and drug dealers, and how to make an effective arrest.   *Id.* at 174.   He indicated the training was continual.   *Id.*

Thereafter, Investigator Napier testified as follows:

Q.   And based on your training and experience, are you familiar
with items commonly used to package narcotics for sale?
A.   Yes, I am.
Q.   And what would those items be?
A.   Digital scales, plastic baggies to put the substances in, boxes,
anything that you could place narcotics in to hide it.   We do search
warrants on a regular basis on residences of people who are in the
business of selling drugs, and we find drugs hidden in all kinds of
different things for storage and ways that they can package these
items for sale.
Q.   In your training and experience, can you tell us what a user
amount of methamphetamine is?
A.   In my line of work, a user amount of methamphetamine is
around a gram maybe, maybe less.   A gram of methamphetamine
on the street in Fort Smith is about a hundred dollars.   So most of
the users that we come across, they are 25, 30, $50 worth of meth
which is less than a gram, so about a gram I would say would be the
average user amount.
Q.   Is there some common household item that weighs a gram that
you can compare that to?

A.   Yeah, a packet of sugar or Sweet N Lo.   That's about the same as a gram.

Q.   Now, what about with regard to marijuana?

A.   Marijuana, I mean a user amount of marijuana, depending on the type of marijuana, there's your regular variety of marijuana. Then you have your more expensive suff.   The more expensive stuff, 20 or $30 worth is typical for our users, which is less than an ounce.   It's merely a few grams.   For the more common marijuana, the brick weed is what we call it, an ounce would be appropriate for a user on that kind of stuff, because it is cheaper.   It's about $100 for that type of marijuana.

(ECF No. 86 at 174-75).

The final witness Jarrett maintains gave improper opinion evidence is defense witness Detective Ware.   (ECF No. 86 at 348).   Detective Ware testified he had worked at the Fort Smith Police Department for 22 years.   *Id.* at 349.   He had been assigned to narcotics for 17 years.   *Id.* To be in the narcotics division, Detective Ware indicated he had gone through specialized training including hundreds of hours of schools put on by several different agencies.   *Id.*   He also received training in evidence collection, investigation, and taking witness statements.   *Id.*   Detective Ware testified he was up-to-date on all his training.   *Id.* at 350.

The testimony Jarrett finds objectionable was elicited on cross-examination by the Government.   Specifically, Detective Ware testified:

Q.   Detective Ware, you said you had been in narcotics for how long?

A.   About 17 years.

Q.   And based on your examination under direct, you apparently have 17 years' worth of training in narcotics investigations?

A.   Yes, ma'am.

Q.   Would you even begin to guess how many cases you've investigated?

A.   Numerous.

Q.   How many, how many a year?   Hundreds?

A.   Yes.

Q.   All right.   I want you to look at what's been admitted as

9

Government's Exhibit 10.[3]   Okay.   Looking at Government's Exhibit 10, which is methamphetamine, based on your years of experience, would you say that this is a user amount or more?

A.   Yeah, it appears to be more than a user amount.

Q.   Now, look at the small baggie in the corner right there.   You see that small baggie in the corner right there?

A.   Yes.

Q.   Is that packaged for resale?

A.   It appears to be, yes.

Q.   All right.   I'm showing you what's been marked and admitted as the Government's Exhibit 11.[4]   These are methamphetamine tablets.   Is this a user amount based on your experience or is this an amount of distribution.

A.   An amount for distribution.

Q.   And I'm showing you what's been admitted as Government's Exhibit 12.[5]   Based on your years of experience as a narcotics officer, is this marijuana in this bag packaged for sale?

A.   Yes, ma'am.

Q.   And looking at it, these small bags, little green bundles right there, is that high grade marijuana?

A.   It appears to be, yes.

Q.   What does that sell for on the streets?

A.   Twenty, $40, $60, depending on the size.

Q.   And is this a user amount of marijuana in this bag?

A.   Yes.

Q.   The individual bags?

A.   The individual bags are user, bagged up as user amounts, yes.

Q.   So would you, when you look at this, based on your years of training and experience, do you see marijuana bagged for distribution?

A.   Yes, ma'am.

(ECF No. 86 at 364-65).

As noted above, the Government contends this testimony was admissible as expert testimony and that any objection would have been unsuccessful.   (ECF No. 108 at 9).   Jarrett responds that none of these witnesses were formally offered as expert witnesses; the witnesses

---

[3] ECF No. 86-2 at 1.

[4] *Id*.

[5] *Id.*

were not subject to voir dire regarding their qualifications; and the witnesses did not provide written reports.[6]   (ECF No. 111 at 6-7).   Even in cases where law enforcement officers were listed only as fact witnesses, the Eighth Circuit has found no error in the admission of their trial testimony as "experts with specialized knowledge of drug-related activities and paraphernalia." *United States v. Ortega*, 150 F.3d 937, 943 (8th Cir. 1998).   One reason given for the admission of such testimony was that "this type of expert evidence has become almost routine in drug cases and has been approved in this circuit."   *Id.*

The Eighth Circuit has approved the use of law enforcement officers as experts in connection with drug offenses.   "In drug cases, courts frequently admit expert testimony relating to the modus operandi of drug dealers, where the expert witness is a law-enforcement officer whose only qualification is experience in the field."   *United States v. Holmes*, 751 F.3d 846, 850 (8th Cir. 2014).   The Court noted:

> Expert testimony must rest on reliable principles and methods, but the relevant reliability concerns may focus on personal knowledge or experience rather than scientific foundations.   This court has repeatedly approved of law enforcement officials testifying as experts on the modus operandi of drug dealers.   Law enforcement officers may testify about the drug trafficking connection of otherwise innocuous household items.   [A]n officer testified as an expert about the significance of Ziploc bags in the drug trade. Although most users of Ziploc bags are not drug dealers, the bags have drug-trade application. . . .   The reliability of such evidence comes not from scientific foundations but from [the officer's] personal knowledge and experience.

*Id.* (citations and internal quotation marks omitted); *see also United States v. Placensia*, 353 F.3d 1157, 1164 (8th Cir. 2003) ("Law enforcement officers may testify as experts concerning the

---

[6] Jarrett references Rule 26 of the Federal Rules of Civil Procedure.   The applicable rule would be Rule 16(a)(G) of the Federal Rules of Criminal Procedure which requires the provision of a written summary of any expert testimony upon the request of the Defendant.   The record does not contain Defendant's requests for discovery.

modus operandi of drug dealers as such activities are not something with which most jurors would be familiar").

Jarrett points out that Officer Elliott, Investigator Napier, and Detective Ware were not independently qualified as experts.   Jarrett notes that his counsel did not engage in voir dire of any of these witnesses and did not object to their giving opinion testimony.   In *United States v. Peebles*, 883 F.3d 1062 (8th Cir. 2018), the Defendant maintained the district court erred in not conducting an independent evaluation of the reliability of the officer.   *Id.* at 1069.   The Eighth Circuit noted that the officer's "extensive service record related to drug investigations, consisting of twenty-eight years of law enforcement experience and hundreds of narcotics investigations, makes plain that his testimony based on experience was reliable and would have satisfied a more detailed, individualized evaluation."   *Id.* at 1069-70.

The same is true here.   The witnesses were well qualified to give lay and expert opinion testimony.   The witnesses were testifying based on their own personal experience as law enforcement officers.   Officer Elliott, Investigator Napier, and Detective Ware were asked about their narcotics investigations, training, continuing education, the number of arrests or cases they had been involved in, their familiarity with how drugs were packaged for sale, whether they had an understanding as to what constituted user amounts and amounts for distribution, and whether they had previously offered testimony regarding user amounts in court   *Id*. at 82, 101-102 (Elliott), 173-174 (Napier), 348-350, 364 (Ware).   It was only after their qualifications were set forth that the witnesses testified as to their understanding of what constituted user amounts and amounts for distribution, discussed the significance of the packaging in this case, and gave their opinion on whether the drugs seized were user amounts or amounts for distribution.   *Id*. at 102-103 (Elliott),

174-176 (Napier), 364-365 (Ware).

As previously discussed, the Eighth Circuit has repeatedly approved the admissibility of modus operandi testimony because the drug trade is not something normally within a juror's understanding. Here, the Court and defense undoubtedly relied on the extensive precedent allowing the admissibility of law enforcement opinion testimony in federal drug prosecutions. In fact, it would have only served to call further attention to the officers' testimony to object to their giving opinion evidence only to have the objection overruled in light of the clear precedent. The Court also notes that the jurors were given jury instructions on the credibility of witnesses and opinion evidence of expert witnesses. (ECF No. 86-3 at 5, 11).

The evidence against Jarrett was overwhelming. He was found in the bedroom lying next to two shoe boxes. (ECF No. 86 at 85). The first box contained numerous bags of a substance later identified as marijuana, and a set of digital scales. *Id*. at 86-86. The second box contained numerous pills which were later determined to be methamphetamine, three baggies containing what was later determined to be methamphetamine, and $1,952 in cash. *Id.* at 87-88. In all, the following items were seized:

> seven Ziploc bags, each containing a green, leafy substance, approximately 30 grams in six of the bags and 14 grams in the seventh bag; two Ziploc bags that contained individually packaged amounts of green, leafy substance, 1.3 grams in smaller packages and four grams in a larger package. Three Ziploc bags containing an amount of crystalline substance, 10 grams in one, 15 grams in another, and one gram in the third; four Ziploc bags containing rectangular-shaped pills, 91 in one, 99 in another, 103 in a third, and a hundred in the fourth; $1,952 in U.S. currency, a pill bottle containing assorted Alprazolam pills, the Smith & Wesson model .40 VE handgun and two mags, two magazines. . . . a nine millimeter handgun, and 16 rounds of ammunition . . . a Phoenix Arms .22 caliber handgun with magazine and one round. . . . A box containing digital scales, a marijuana grinder, two boxes of ammunition.

*Id.* at 91-92.

There is nothing suggesting that in failing to challenge the opinion testimony of the law enforcement officers, or in failing to request a curative instruction, that defense counsel's performance fell below an "objective standard of reasonableness." *Lafler v. Cooper*, 132 U.S. 1376, 1384 (2012) (internal quotation marks and citation omitted); *see also Garrett v. United States*, 78 F.3d 1296, 1302 (8th Cir. 1996) ("The performance of an attorney is not deficient because the attorney failed to object to admissible evidence"). Jarrett has not demonstrated prejudice under *Strickland* from counsel's failing to object to the testimony or the failure to ask for a curative instruction. Nothing in the trial record suggests that had trial counsel done so, there was a reasonable probability that the result of the proceedings would have been different. *See e.g., McNairy v. United States*, No. C 12-4110-MWB, No. CR 10-4083-6-MWB, 2015 WL 631336, *12-13 (N.D. Iowa Feb. 13, 2015) (not ineffective assistance of counsel where counsel failed to challenge expert testimony offered by law enforcement officers). Defense counsel was not ineffective in connection with the opinion testimony of the law enforcement officers.

### E.  GROUND TWO: Jury Instruction on Grant of Immunity

For his second ground for relief, Jarrett maintains the jury instruction given regarding the grant of immunity to Henderson was inadequate, and he asserts Henderson could have been an unindicted co-defendant because of her involvement. (ECF No. 103 at 11-12). Specifically, he points out: the apartment was rented in Henderson's name; the day of the search, May 17, 2016, she allowed law enforcement officers into the apartment; she directed them to the bedroom she and Jarrett shared and where he was located at the time; the officers found the drugs, paraphernalia, two firearms under a pillow and one in a closet; she knew the source city for both the

methamphetamine and the marijuana; and, she had purchased two of the firearms.  *Id.*  Jarrett claims the "jury accepted Henderson's testimony with the same degree of certainty as other witnesses when her testimony should have been viewed with caution."  *Id*. at 13.

The Government contends there was no basis for objection to the jury instruction on testimony under grant of immunity.  (ECF No. 108 at 12).  They point out that the instruction mirrored that of the Model Jury Instructions for the Eighth Circuit and carefully and extensively instructed the jury on how they should consider Henderson's testimony.  *Id.*

The specific jury instruction, Final Instruction No. 8, provided:

### TESTIMONY UNDER GRANT OF IMMUNITY

You have heard evidence that Amber Henderson received a promise from the government that that (sic) she will not be prosecuted, and that her testimony will not be used against her in a criminal case.  Her testimony was received in evidence and may be considered by you.  You may give her testimony such weight as you think it deserves.  Whether or not her testimony may have been influenced by the government's prosecution's (sic) promise is for you to determine.

(ECF No. 86-3 at 10).

The instruction given by the Court is Instruction 4.04 of the Model Criminal Jury Instructions for the Eighth Circuit (2017 ed).  The Committee Comments to this instruction make note of the fact that the Eighth Circuit has rejected the use of "'cautionary tail,' language to the effect that testimony from such a witness must be examined with greater caution and care than an ordinary witness.  . . . [T]his Circuit has criticized the use of a 'cautionary tail' as an unwarranted intrusion into the jury's functions."  *Id.*

In *United States v. McGinnis*, 783 F.2d 755 (8th Cir. 1986), the court stated that "[d]ecisions as to credibility and as to what weight particular testimony should receive properly rest with the jury."  *Id.* at 758.  The Eighth Circuit held that the failure to give a cautionary

15

instruction about the testimony of accomplices granted immunity is reversible error only if the testimony given by the immunized witness was the "only evidence that the accused participated in a crime-the government did not or could not otherwise corroborate the testimony."   *Id.*

In *United States v. Einfeldt*, 138 F.3d 373 (8th Cir. 1998), Einfeldt argued that the district court erred in refusing to give an instruction that the testimony of informants, accomplices, and witnesses who were granted immunity should be considered "with greater caution and care than that of other witnesses."   *Id.* at 378-79.   The Eighth Circuit noted the district court had given an instruction, from the Model Instructions, "advising the jury to give the testimony of informants, accomplices, and witnesses who were granted immunity such weight as the jurors thought these witnesses deserved."   *Id.* at 378.   The Eighth Circuit held that the "cautionary instruction [requested by Einfeldt] is not required if the testimony of such witnesses was corroborated by additional evidence."   *Id.* at 379.   It noted there "was substantial corroborating evidence" in the case.   *Id*.

In this case, defense counsel cross-examined Henderson regarding the immunity agreement and pointed out inconsistencies in her testimony.   (ECF No. 86 at 258-295).   Henderson's testimony was corroborated by the evidence found in the apartment and by the testimony of other witnesses.   The jury instruction given drew the jury's attention to the fact that Henderson testified under a grant of immunity and appropriately left to the jury the decision of what weight should be given to Henderson's testimony.   The Court agrees with the Government that any request for a cautionary instruction would have been denied.   As such, defense counsel's performance was not deficient, nor was Jarrett prejudiced given the substantial evidence of his guilt.   *See Burton v. Dormire*, 295 F.3d 839, 846 (8th Cir. 2002) (cannot fault counsel for failing to raise an issue on

which he could not have obtained any relief).   Defense counsel was not ineffective for failing to object to Final Instruction 8 or in failing to ask for a cautionary instruction.

### F.  GROUND THREE: Jury Instruction on Inference of Intent to Distribute

Jarrett next argues that when the trial court instructed the jury that it could make an inference of intent to deliver based on the quantity of the drugs it in effect determined elements of the crimes charged in Count One and Count Two.   (ECF No. 103 at 13).   Jarrett maintains his counsel should have objected to the instruction "which removed from the jury facts that the jury should have found on its own."   *Id*.   Citing *Sandstrom v. Montana*, 442 U.S. 510 (1979), Jarrett states that:

> An instruction directing the jury's attention to a specific inference should be given only when a) there is a specific inference at issue supported by the evidence; b) it is one which is specifically recognized by common law, judicial precedent or statute and c) it has been requested.   Many of the inferences recognized by common law were and are still called "presumptions."   However, if used in an instruction, these "presumptions" must be phrased in terms of a permissive inference.

(ECF No. 103 at 15).

In *Sandstrom,* the question before the Court was "whether, in a case in which intent is an element of the crime charged, the jury instruction, 'the law presumes that a person intends the ordinary consequences of his voluntary acts,' violates the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt."   *Sandstrom,* 442 U.S. at 512.   The Court held that the instruction did violate the Fourteenth Amendment.   The Court noted the jury was told that "'[t]he law presumes that a person intends the ordinary consequences of his voluntary acts.'   They were not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it.   It is clear a reasonable juror

17

could easily have viewed such an instruction as mandatory." *Id.* at 515.

The *Sandstrom* Court also rejected the argument that the instruction merely shifted the burden of production onto the petitioner. *Id.* at 516-517. In so doing, the Court stated that "[g]iven the common definition of 'presume' as 'to suppose to be true without proof,' . . . and given the lack of qualifying instructions as to the legal effect of the presumption, we cannot discount the possibility that the jury may have interpreted the instruction in either of two more stringent ways." *Id.* at 517. The Court noted the jury could have viewed the presumption as conclusive or:

> may have interpreted the instruction as a direction to find intent upon proof of defendant's voluntary actions (and their "ordinary" consequences), unless *the defendant* proved the contrary by some quantum of proof which may well have been considerably greater than "some" evidence—thus effectively shifting the burden of persuasion on the element of intent.

*Id.*

The Court noted that it had previously ruled that a conclusive presumption "*would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime.*" *Sandstrom*, 442 U.S. at 522 (quoting *Morissette v. United States,* 342 U.S. 246, 274-75 (1952) (emphasis added; footnote omitted)). Again, in *United States v. United States Gypsum Co.,* 438 U.S. 422 (1978), the Court held that if the offense included an element of intent: "[A] defendant's state of mind or *intent is an element [of the crime it] cannot be taken from the trier of fact through reliance on a legal presumption* of wrongful intent." *Sandstrom*, 442 U.S. at 523 (quoting *United States Gypsum Co.,* 438 U.S. at 435 (emphasis added)). The Court held that an instruction "which, although not conclusive, had the effect of shifting the burden of persuasion to the defendant, would have suffered similar infirmities."

*Sandstrom*, 442 U.S. at 524.   It concluded that "[b]ecause David Sandstrom's jury may have interpreted the judge's instruction as constituting either a burden-shifting presumption . . . or a conclusive presumption, . . . and because either interpretation would have deprived defendant of his right to the due process of law, we hold the instruction given in this case unconstitutional." *Id.*   Jarrett's position is that the instruction given in his case suffers the same infirmities as those present in *Sandstrom* and must be held to be unconstitutional.

In this case, the jury received the following general instruction on proof of intent or knowledge:

> Intent or knowledge may be proved like anything else.   You may consider any statements made and acts done by the defendant, and all the facts and circumstances in evidence which may aid in a determination of the defendant's knowledge or intent.
>
> You may, but are not required to, infer that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

(ECF No. 86-3 at 13 (Final Instruction No. 11)).

Here, Jarrett objects to the portion of each instruction dealing with the intent to distribute element of each offense, specifically the third element of both Count One and Count Two.   Final Jury Instructions 12 and 13 for the third element provide:

> *Three,* the defendant intended to distribute some or all of the [controlled substance] to another person.   I instruct you that possession of a large quantity of [controlled substance] supports an inference of an intent to distribute.   Thus, in determining whether the defendant possessed [the controlled substance] with the specific intent to distribute it, you should consider whether the defendant possessed a large quantity of [controlled substance].   If you believe that he did, then you may infer that he had the specific intent to distribute.

(ECF No. 86-3 at 14-15).

As the Government correctly notes, this instruction mirrors Model Jury Instruction

6.21.841A and the instruction approved in *United States v. Shrum*, 849 F.2d 1090, 1095 n.6 (8th Cir. 1988), contained in the notes on use of the instruction.   In *United States v. Parker*, 32 F.3d 395, 402 (8th Cir. 1994), the Eighth Circuit again approved the use of an inference of intent to distribute instruction noting that the "instruction as given contained a permissive and not mandatory inference.   The instruction explicitly informed the jury that they "'may, but are not required to, find or infer that the defendant intended to distribute' based on possession of a large quantity of methamphetamine."   *Id.*   The Eighth Circuit further noted that "[i]n the absence of evidence that drugs are for personal use, possession of a large quantity can be indicative of intent to distribute."   *Id.*; *see also United States v. Lopez,* 880 F.3d 974, 981 (8th Cir. 2018) (noting the court continued to approve the giving of a jury instruction permitting an inference of intent to distribute—in that case based on drug purity); *United States v. Thompson*, 686 F.3d 575 (8th Cir. 2012) (rejected argument that inference instruction needed to refer to the large quantity of drugs, possession of paraphernalia, large sums of unexplained cash, the high purity level of the drug, and the presence of firearm, noting that while "each type of evidence on that list independently may support a legitimate inference of intent to distribute; consideration of all of them is not required").

The Court agrees with the Government that any objection to the inference of intent to distribute instruction would have been rejected.   The Eighth Circuit law is clear that such an inference instruction is allowed so long as it leaves the question of whether or not to draw that inference to the jury.   Here, the instruction provided that "*if you believe* that [defendant possessed a large quantity of drug], then you *may* infer that he had the specific intent to distribute."   (ECF Nos. 12, 13 (emphasis added)).   Clearly, this is a permissive instruction that left the decision of whether or not to make such an inference to the jury.   Further, the jury also received the more

general instruction, quoted above, on intent and knowledge.  *Id.* at 13.  As such, defense counsel's performance was not deficient, nor was Jarrett prejudiced given the substantial evidence of his guilt.[7]  *See Burton*, 295 F.3d at 846 (cannot fault counsel for failing to raise an issue on which he could not have obtained any relief).  Defense counsel was not ineffective for failing to object to the inference of the intent to distribute portion of Final Instructions 12 and 13.

### III.   CONCLUSION

Based upon the foregoing, the undersigned recommends that Jarrett's Motion to Vacate (ECF No. 102) filed pursuant to 28 U.S.C. § 2255 be DENIED and DISMISSED WITH PREJUDICE.

An appeal may not be taken in this matter unless the Court issues a certificate of appealability, which shall be issued only if "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §§ 2253(b) and (c)(2); *see Copeland v. Washington*, 232 F.3d 969, 977 (8th Cir. 2000).  A "substantial showing" is a showing that "issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further."  *Randolph v. Kemna*, 276 F.3d 401, 403 n.1 (8th Cir. 2002) (quotation marks and citation omitted).  Based upon the above analysis of Jarrett's § 2255 motion, the undersigned does not believe that there is any basis for the issuance of a certificate of appealability and, therefore, recommends that a certificate of appealability be denied.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file**

---

[7] The record also contained evidence that Jarrett has previously been convicted of drug related offenses on three separate occasions.  (ECF No. 86 at 12-24).

21

**timely objections may result in waiver of the right to appeal questions of fact.   The parties**

**are reminded that objections must be both timely and specific to trigger de novo review by**

**the district court.**

DATED this 19th day of April 2021.

/s/ Mark E. Ford

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE